FILED
APR 23 2014
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 14-30011-DRH |
| ) | |
| vs. ) | Title 18, |
| ) | United States Code, |
| KYLE RICHARD ROBERTSON, ) | Section 1349 |
| ) | |
| Defendant ) | |

## STIPULATION OF FACTS

In connection with the Defendant's plea of guilty, the parties agree to the following facts:

1. Beginning on or about February 26, 2009, and continuing until on or about December 4, 2009, the defendant, **KYLE RICHARD ROBERTSON** was a manager and telemarketer at C&G Marketing Associates, LLC, a Florida corporation that defrauded consumers using the fictitious name, Premier Timeshare Solutions ("PTS").

2. During that time, **ROBERTSON** and other PTS employees conducted a fraudulent timeshare resale scheme through the use of telemarketing.

3. PTS telemarketers worked in an office building in West Palm Beach, Florida. From there, they placed phone calls to timeshare owners throughout the United States, Canada, and elsewhere, falsely representing or implying that the company had found someone who wanted to buy their timeshare interest.

4. In exchange for an advance fee that typically exceeded $1,000, the PTS telemarketers promised to handle all the details of the sale and send the victims the proceeds after closing. Once the victims had paid the advance fee, however, usually by giving the

1

telemarketer their credit card information, the fraudulent company simply pocketed the money. There were no interested buyers, the closings did not occur, and the timeshares were not resold. It was, simply put, an act of thievery.

5. To discourage and defeat subsequent chargeback attempts, PTS sent victims written contracts to sign and return – contracts that made no mention of the promised sale and obligated the company merely to provide marketing and advertising services. Because the original sales calls were not recorded, PTS could later claim that marketing and advertising was all that had ever been promised, and that any contrary impression the victim may have formed – for instance, that there was a concrete offer for the customer's unit or some genuine interest by a qualified buyer – was simply a misunderstanding.

6. Victims who called PTS to check on the status of their transactions were directed to customer service representatives. The role of the PTS customer service department was to perpetuate the fraud by delaying and discouraging chargebacks and complaints. To accomplish that goal, representatives would lie to victims, assuring them that despite some phony, unexpected delay, their timeshare unit was still going to be sold. Repeat callers were given a series of bogus excuses, none of which had any basis in fact. By instilling a false sense of hope, PTS aimed to delay the chargeback process beyond the time that most credit card issuers allow for disputes.

7. During its period of operation, PTS victimized over 7,000 people spread across each of the 50 States, three United States territories, six Canadian Provinces, and the Bahamas. At least 47 victims of the scam were located within the Southern District of Illinois, representing half of the district's 38 counties. All told, the scheme took in over $14.5 million.

8. In furtherance of and as a foreseeable consequence of the conspiracy, PTS employees caused contracts and other documents to be transmitted by U.S. Mail and commercial interstate carrier to the Southern District of Illinois.

9. In furtherance of and as a foreseeable consequence of the conspiracy, PTS employees caused interstate telephone calls to be placed to the Southern District of Illinois.

_____
KYLE RICHARD ROBERTSON
Defendant

_____
Shelby Cowley
Attorney for Defendant

Date: 4/23/14

STEPHEN R. WIGGINTON
United States Attorney

_____
MICHAEL HALLOCK
LIAM COONAN
Assistant United States Attorney

Date: 4/23/14

3